Read, J.
(dissenting). When we decided People v Paulin (17 NY3d 238 [2011]) four years ago, there was no dispute that CPL 440.46 limited its resentencing relief to incarcerated persons; parolees were ineligible. This was so because the statute applied to “[a]ny person in the custody of the department of correctional services” (former CPL 440.46 [1] [emphasis added]), the agency that ran the state prison system when this provision was enacted as part of the 2009 Drug Law Reform Act (2009 DLRA). We observed that “in making this distinction” between prisoners and parolees, “the Legislature recognized that the burden of inordinately harsh punishment [imposed by the Rockefeller Drug Laws] falls most heavily on those who are in prison” (17 NY3d at 244 [internal quotation marks omitted and emphasis added]).
After their convictions for class B drug felonies, Paulin and Pratts, the defendant in a companion case, were sentenced and incarcerated, eventually were released on parole, violated their parole and so were reincarcerated. When the 2009 DLRA took effect, they applied for resentencing. The wrinkle in Paulin and Pratts, then, was that the defendants were in prison for violating their parole, and the question presented was whether this made them ineligible for resentencing under CPL 440.46.
After the appeals had been briefed but before they were argued, the Governor signed chapter 62 of the Laws of 2011. As part of the State’s enacted budget for fiscal year 2011-2012, various State agencies and entities were restructured, principally to save money by streamlining operations and rationalizing missions. Chapter 62, an article VII budget bill, made those changes to permanent law necessary to effectuate or reflect several of these restructurings, including the merger of the Department of Correctional Services and the Division of Parole to form a combined Department of Corrections and Com *253 munity Supervision (see generally Pataki v New York State Assembly, 4 NY3d 75, 83 [2004] [“(T)he Governor submits a budget to the Legislature accompanied by ‘a bill or bills containing all the proposed appropriations and reappropriations included in the budget and the proposed legislation, if any, recommended therein1 ” (quoting NY Const, art VII, §§ 2, 3 [emphasis added])]).
Defense counsel for Paulin and Pratts wrote to inform us of this development. He recognized that chapter 62 did not govern his clients’ appeals because the orders denying them resentencing relief predated the legislation’s effective date. He nonetheless contended that “the amendments, together with the new law’s integrated statement of legislative intent, confirm what we argued in our previously filed briefs, i.e., that a plain-language interpretation of CPL § 440.46 advances the legislative intent that motivated the 2009 DLRA.”
We subsequently held in Paulin that “prisoners who have been paroled, and then reincarcerated for violating their parole, are not for that reason barred from seeking relief under [CPL 440.46]” (17 NY3d at 242). This was so, we opined, because “Paulin and Pratts fit squarely within the text of the 2009 DLRA” (id. at 243); that is, they were in prison when they filed their applications for resentencing under the 2009 DLRA (see also People v Santiago, 17 NY3d 246 [2011] [a prisoner who applied for resentencing under the 2009 DLRA while incarcerated remains eligible for relief even if paroled before the application is ruled on]). We declined to consider chapter 62, observing in a footnote that “[a] recent amendment changed the words ‘department of correctional services’ to ‘department of corrections and community supervision’. The change is of no consequence in these cases. We need not decide its effect, if any, on other situations” (Paulin, 17 NY3d at 243 n [citation omitted]).
The Court now holds that this name change expanded resentencing eligibility under the 2009 DLRA “to include those who are on parole at the time resentencing is sought” (see majority op at 249). The majority principally relies on the text of section 440.46, as amended by chapter 62, and the principle that “remedial statutes such as the DLRA should be interpreted broadly to accomplish their goals — in this case the reform of *254 unduly harsh sentencing imposed under pre-2005 law” {id. at 251).[1]
While we depend first and foremost on the text of a statute to determine what the legislature intended, we have always recognized that text may not properly be read in isolation and that statutes must be construed as a whole, i.e., text derives meaning within a context (see Friedman v Connecticut Gen. Life Ins. Co., 9 NY3d 105, 115 [2007]). Here, the relevant statute is chapter 62 of the Laws of 2011, § 1, part C, § 1, subparts A and B. Subpart A includes the statement of legislative intent to support merger of the Department of Correctional Services and the Division of Parole to form the Department of Corrections and Community Supervision, and amends substantive law as necessary to create the new agency, e.g., by adding a new article 8, entitled “Community Supervision,” to the Correction Law.
Subpart B, by contrast, merely enacts amendments as necessary to reflect the merger. In furtherance of this purpose, sections 1 through 48 of subpart B make name change and other minor technical amendments to the Correction Law, and sections 49 through 173 march through 35 other titles of New York’s Consolidated Laws, substituting “Department of Corrections and Community Supervision” for “Department of Correctional Services” or “Division of Parole.”[2] No changes in substantive law accompany these name change amendments; only additional technical corrections were effected, such as *255 emendations to replace agency names made obsolete by previous government restructurings (e.g., “Office of Children and Family Services” for “Division for Youth”), to render the language gender-neutral (e.g., “him or her” for “him”) or to correct typographical errors. The amendment of section 440.46 to replace “Department of Correctional Services” with “Department of Corrections and Community Supervision” appears in one of the 18 sections in subpart B where these minor changes were made to provisions in the Criminal Procedure Law.
Thus, while the merger itself may be said to carry out the legislature’s judgment that a unitary agency responsible for all offenders makes sense for purposes of sentencing and rehabilitative as well as budgetary policy, the same cannot be said for the 2011 amendment of section 440.46. The majority gives substantive law meaning to a mere name change amendment, which is belied by the context in which it was adopted as part of an article VII budget bill. And since this name change amendment was not intended to have any remedial effect, its enactment presents no occasion for us to interpret section 440.46 differently and more broadly now than we did in Paulin.
The majority highlights, and obviously agrees with, policy considerations that favor allowing nonincarcerated parolees to apply for the sentencing relief made available by section 440.46. But it is up to the legislature, not the courts, to decide whether to expand this provision’s ameliorative sweep, and I cannot agree that the legislature has done so. At most, the 2011 amendment of section 440.46 created an ambiguity easily resolved by considering its place within chapter 62, § 1, part C as a whole. Finally, the restructuring of State agencies and entities through the budget process is routine. I therefore worry about the potential consequences of today’s decision to alter substantive law on the authority of a run-of-the-mill name change amendment appearing in an article VII budget bill. Accordingly, I respectfully dissent.
Judges Pigott, Rivera, Stein and Fahey concur; Judge Read dissents in an opinion in which Judge Abdus-Salaajvi concurs.
Order affirmed.

. The majority also states that its interpretation “corrects the anomaly under the pre-merger law of permitting resentencing for parole violators who have been returned to prison, but not for those who had complied with the terms of their parole,” citing Paulin (majority op at 252). In Paulin, however, we expressly rejected the idea, advanced by the People in that case, that any such purported “anomaly” created an absurd result that the legislature never would have intended.

. The titles amended were the Abandoned Property Law, the Alcoholic Beverage Control Law, the Civil Practice Law and Rules, the Civil Rights Law, the Civil Service Law, the County Law, the Court of Claims Act, the Criminal Procedure Law, the Education Law, the Election Law, the Environmental Conservation Law, the Executive Law, the Facilities Development Corporation Act, the Family Court Act, the General Business Law, the General Municipal Law, the Labor Law, the Legislative Law, the Mental Hygiene Law, the Municipal Home Rule Law, the Penal Law, the Public Buildings Law, the Public Health Law, the Public Officers Law, the Railroad Law, the Retirement and Social Security Law, the Social Services Law, the State Administrative Procedure Act, the State Finance Law, the State Technology Law, the Surrogate’s Court Procedure Act, the Tax Law, the Town Law, the Vehicle and Traffic Law and the Workers’ Compensation Law.